**BLAKE CONSTRUCTION COMPANY, Inc., Appellant**

v.

**UNITED STATES of America, Appellee.**

**UNITED STATES of America, Appellant**

v.

**AETNA CASUALTY AND SURETY COMPANY, Appellee.**

**Nos. 15948, 16049.**

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 23, 1961.

Decided Aug. 3, 1961.

---

3. See Mallett v. Tunnicliffe, 1931, 102 Fla. 809, 136 So. 346, 137 So. 238, 80 A.L.R. 785.

4. Supra note 2.

Mr. M. William Adelson, Baltimore, Md., of the bar of the Court of Appeals of Maryland, pro hac vice, by special leave of court, with whom Mr. Harry L. Ryan, Jr., Washington, D. C., was on the brief, for appellant in No. 15948.

Mr. Abbott A. Leban, Asst. U. S. Atty., with whom Messrs. Oliver Gasch, U. S. Atty. at the time of argument, and Carl W. Belcher, Asst. U. S. Atty. at the time of argument, were on the brief, for appellant in No. 15948. Mr. Frank Q. Nebeker, Asst. U. S. Atty., also entered an appearance for appellant in No. 16049 and appellee in No. 15948.

Mr. Alexander M. Heron, Washington, D. C., with whom Mr. John A. Whitney, Washington, D. C., was on the brief for appellee in No. 16049.

Before WILBUR K. MILLER, Chief Judge, and PRETTYMAN and BURGER, Circuit Judges.

BURGER, Circuit Judge.

In 1950 the Public Buildings Service of General Services Administration entered into negotiations with Blake Construction Company, appellant in No. 15948, for the renovation of a portion of a government building. A letter of understanding from the GSA, dated December 28, 1950, stated that Blake was to perform the work in accordance with specifications to be drawn by GSA for a

lump-sum figure to be determined on the basis of 5% for profit, and that a contemplated formal contract "will include a clause providing for renegotiation at completion of the work." A further letter of the same date stated the proposal and incorporated provisions of government standard forms that the contract would be subject to renegotiation and that "all disputes concerning questions of fact arising under this contract" would be subject to departmental administrative review. Blake accepted these terms. The formal contract was finally prepared and submitted five months later at a time when the work was substantially complete. It stated a lump-sum price for the work, but did not include the government form containing the renegotiation provision. Upon completion of the work, the government proposed an audit of Blake's accounts pursuant to renegotiation. Although Blake maintained that there was no contractual provision for renegotiation, Blake allowed the audit to proceed since the contract might be subject to the Renegotiation Act of 1951, 65 Stat. 7, as amended, 50 U.S.C.A.Appendix, §§ 1211–1224. The contracting officer subsequently ruled that Blake had been overpaid $57,281.10. Blake contested this determination before the GSA Board of Review on the ground that the contract was not subject to renegotiation. The Board of Review concluded that the renegotiation provision had been omitted from the formal contract document inadvertently, and that both parties assumed that the contract was subject to renegotiation. Alternatively, the Board expressed the view that if it be assumed that the renegotiation provision was intentionally omitted, the modification of the original contract in favor of Blake was not supported by consideration. The government sued Blake for the overpayment in the District Court and also sought judgment against Aetna Casualty and Surety Company, appellee in No. 16049, who was surety on the performance bond provided by Blake. On cross-motions for summary judgment, the District Court granted summary judgment for the government in its action against Blake, but granted judgment for Aetna in that part of the action.

## No. 15948

The issues presented on this appeal are:

(1) Assuming that the renegotiation provision was intentionally omitted from the formal contract, did the government receive consideration for relinquishing its right to renegotiate?

(2) If there was consideration, is appellant nonetheless bound by the government's lack of authority to enter into a cost-plus-percentage-of-cost contract which did not include a renegotiation provision?

(3) If not so bound, was the determination by the Board of Review that the provision was intentionally omitted binding upon the District Court as a finding on a "question of fact arising under" the contract?

The government contends that the District Court's grant of summary judgment in its favor may be sustained on the basis of the provisions of the December 28 letter. Blake denies that a contract was formed at that point because the letter did not specify the contract price or describe the work to be performed. We need not reach the question whether the exchange of letters constituted a valid contract. If we assume that the letters were not sufficiently definite, then the formal contract is sufficiently definite and supported by consideration. On the other hand, if there was a valid letter contract, it was superseded by the formal contract.

■ Until the execution of the formal contract, no fixed price had been determined. After execution, Blake obtained the opportunity of increasing its profit margin by economies in its operation but this was not without the possibility of some risk, however unlikely that risk might be. The government on the other hand acquired the benefit of a fixed maximum on the amount of its cost for the project. Thus, on either assumption with respect to the legal effect of the

prior negotiations, the formal contract was valid and supported by consideration. The government's argument on this point takes a strained view of the nature of consideration required to support contractual obligations. Among other things it is not unknown in construction contracts for profits to become dissipated or even turn into losses because of factors encountered at the very latest stages of performance. It is not the probability of such an occurrence but the mere possibility which is sufficient to constitute legal consideration.

Alternatively, the government argues that the formal contract cannot be given effect because it is merely a disguised attempt to create a cost-plus-a-percentage of cost type of contract, barred by section 304(b) of the Federal Property and Administrative Services Act of 1949, 63 Stat. 395, as amended, 41 U.S.C.A. § 254 (b).

██ In dealings with the government, unlike those with private parties, one is charged with knowledge of the extent of the actual authority of the government's contracting agent since no agent of the government can hold out to have any authority not sanctioned by law. However difficult the process may be, his actual authority can be ascertained. National Electronic Labs., Inc., v. United States, Ct.Cl. 1960, 180 F.Supp. 337, 341–342. The size and complexity of government makes this rule necessary, and the public nature of the instruments such as statutes, executive orders and regulations granting and limiting authority makes it the only feasible rule.

██ In essence the government argues that the inclusion of the renegotiation provision in the letter contract saved it from the bar of section 304(b), but that its omission in the formal document renders the latter nugatory since it contends a contract without a renegotiation provision was not authorized. But this argument fails to recognize that the formal contract established a fixed contract price, thereafter subjecting the contractor to the risk that rising costs would dilute his profit margin. Moreover, even if we accept the government's argument that at the late stage when the formal contract was executed, with ninety per cent of the work complete, risks were so calculable that the price merely disguised a cost-plus-percentage-of-cost arrangement, the invalidity of the formal contract would not support the government's position on the appeal. If in fact the contract was made without authority, then perhaps no contract exists, but the contractor is nonetheless entitled to the reasonable value of the benefits conferred. 38 Decs.Comp.Gen. 38 (1958). The record does not reveal that such a computation would result in the precise amount determined by the contracting officer pursuant to the renegotiation provision which he believed to be a part of the contract. Hence, the judgment cannot be affirmed on that ground.

The government concedes that the reformation of the contract to express correctly the intent of the parties is a function of the District Court rather than the GSA Board of Review. Nevertheless, it contends that the Board had jurisdiction to determine the facts underlying reformation, and that its findings on those facts can be disturbed only if "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." 41 U.S.C.A. § 321. Thus, it is argued that the finding that the parties intended to include the renegotiation provision cannot be disturbed on this record, and provides the basis for summary judgment.

The government relies on Lowell O. West Lumber Sales v. United States, 9 Cir., 1959, 270 F.2d 12, which held that the question whether an arrangement between the government and a contractor was a "requirements" contract or merely a "call" agreement which did not bind the government was to be decided on the record before the administrative board of review.

The problem raised is familiar to other areas of the law in which the allocation of functions between two authorities is in question, and is traditionally framed

as whether the matter is a question of law or of fact. Whether the formula be used to divide the functions of judge and jury, or of court and agency, a practical approach to the allocation of functions is the guideline. See Dobson v. Commissioner, 1943, 320 U.S. 489, 64 S.Ct. 239, 88 L.Ed. 248; Davis, Administrative Law § 245 (1951).

■ We hold that whether grounds for reformation of a contract exist is a question for a United States court on evidence adduced before it and not to be determined on the record made before the Board of Review in the executive branch. Unlike a fact determination that profits were "excessive" in some amount, or that certain work is within the specifications of the contract, neither agency expertise in evaluation nor the need for an immediate decision calls for determination of the reformation issue by the Board of Review. The District Judge was surely as well equipped, if indeed not better equipped than the Board, because of his experience in questions of general contract law, to resolve the reformation issue. Therefore, a summary judgment for the government based on the administrative record alone is not the appropriate remedy.

The District Court did not reach the question of an independent judicial determination of the reformation of the contract. Whether the government can make out a case for reformation must of course await the de novo evaluation of evidence adduced on the remand. Case No. 15948 is remanded to the District Court for further proceedings consistent with this opinion.

### No. 16049

The sole issue in this appeal is the liability of the surety, The Aetna Casualty and Surety Company, for any sums which the government might be entitled to recover from Blake. By its terms, the bond made Aetna surety for the obligations of Blake under the "contract with the Government, numbered and dated as shown above and hereto attached." The District Court granted summary judgment on behalf of the surety in this phase of the case.

■ Although the government contends that the bond can be read as referring to the letter contract which was dated and numbered as indicated in the bond, any such ambiguity is removed by the statement that the obligation guaranteed is the contract attached to the bond. Only the formal contract, which did not contain the renegotiation provision, was attached to the bond.

The government also argues that the backdating of the contract put the surety on notice that the transaction was irregular, and that Aetna should have made inquiry to determine that the entire obligation of Blake was stated in the formal contract. But the cases upon which the government relies hold merely that a surety cannot obtain relief from the terms of its obligation by asserting lack of knowledge of extrinsic facts; they do not sanction the extension of the surety's liability by resort to such facts. See e. g., Larmore v. People's State Bank, 1934, 206 Ind. 66, 188 N.E. 317. The bond clearly encompassed only the formal document attached thereto, and therefore the District Court correctly granted judgment in favor of Aetna.

No. 15948. Reversed and remanded for further proceedings.

No. 16049. Affirmed.

PRETTYMAN, Circuit Judge (concurring).

I concur in the opinion and the decision, but I would include in the remand order an instruction to the District Court to take evidence and make a finding upon the question whether there was in fact at the time of the execution of the formal contract a possibility of loss of profits. If there was no such possibility (a most unlikely state of affairs), there would be no consideration. The evidence one way or the other, I would suppose, would be easy to find and to present, and the finding would be simple to make.