**ALLIED PAINT & COLOR WORKS, INC., Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 202, Docket 27236.

United States Court of Appeals Second Circuit.

Argued Feb. 6, 1962.

Decided Aug. 29, 1962.

Lewis, MacDonald & Varian, New York City (Robert D. Witte, Maurice J. Gilchrist, Jr., New York City, of counsel), for plaintiff-appellant.

Eugene R. Anderson, New York City, William H. Orrick, Jr., Asst. Atty. Gen., Robert M. Morgenthau, U. S. Atty., S.D. N.Y., John G. Laughlin, John C. Eldridge, Attys., Dept. of Justice, Washington, D. C., for defendant-appellee.

Before LUMBARD, Chief Judge, and SWAN and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

Appellant, a paint contractor, brought the present action against the United States in the U. S. District Court for the Southern District of New York for breach of contract, alleging that the Government failed to deliver a certain quantity of phosphorescent paint which it was the Government's duty to furnish under the contract. This is an appeal from the order of the district court dismissing appellant's complaint. We affirm the court below.

On June 20, 1952, following an invitation to bid, appellant and the Government entered into contract No. N383s–77428 (hereinafter referred to as contract No. 1), under which appellant agreed to furnish the Government 7,644 paint kits to be delivered to various government depots within 90 days after the date of the contract. Each kit was to contain a quart can of phosphorescent paint which was called component "A," a quart can of white primer, a quart can of thinner, and a quart can of varnish. The contract expressly provided that the 7,644 quarts of phosphorescent paint, totalling 1,911 gallons, were to be Government-furnished, and the Government was to deliver them in one gallon cans to appellant's plant within 30 days from the contract date.

Contract No. 1 then provided that upon request by appellant the dates for appellant's performance would be extended if the Government delayed in supplying the Government-furnished property, and though the Government would not be liable for delays in the delivery of the phosphorescent paint or for failure to deliver, an equitable adjustment in the performance date or the price would be made upon the written request of the contractor. The contract also provided that the Government could increase or decrease the amount of property it was to furnish, and in such event, there was provision for price or date adjustments. Although title to the phosphorescent paint remained in the Government, appellant agreed to assume the risk of loss after the property was delivered by the Government. The contract stated that:

"[T]he Contractor, upon delivery to it of any Government-furnished property, assumes the risk of, and shall be responsible for, any loss thereof or damage thereto except for reasonable wear and tear * * *"

The contract also contained a "Disputes" clause, whereby the parties agreed that disputes arising under the contract should be settled by the Contracting Officer, with the right of appeal to the Secretary of Defense or his representative, i. e., the Armed Services Board of Contract Appeals.

Under contract No. 1 the Government was able to deliver to appellant only 3,956 quarts (989 one gallon cans) of phosphorescent paint. All but 240 quarts of the paint were put up by appellant in the specified quart cans, and were combined with the other required products to complete 3,716 kits, which were delivered to, and paid for by, the Government. After delivery of these kits appellant still had the remaining 240 quarts of Government-furnished phosphorescent paint on hand.

Negotiations between appellant and the Government during 1953 led to the execution of a second contract, No. 383s–97516, on January 7, 1954 (hereinafter referred to as contract No. 2). In this contract, appellant agreed to furnish the Government 3,688 quarts of phosphorescent paint in one quart cans at a price of $6.17 per quart. This was the exact amount of paint needed to complete contract No. 1 and was paint of the same type of phosphorescent paint called for by contract No. 1.

Contract No. 2, unlike the earlier contract, contained no express words in the schedule, specifications, or elsewhere, stating that "The Government shall furnish to the Contractor for use in connection with this contract, the material set forth below," followed by a description of any "material." Contract No. 2 did provide, however, as follows:

"GOVERNMENT FURNISHED MATERIAL

"The Phosphorescent Paint to be furnished under this contract shall be packaged and marked by the contractor so it may be used, without repacking or remarking, as Component 'A' of the Phosphorescent Paint Kits to be furnished by the same contractor under Contract N383s–77428 [No. 1].

"Contract N383s–77428 [No. 1] provides that Component 'A' (Phosphorescent Paint) shall be supplied by the Army as Government Furnished Material in the amount of 1,911 gallons, which amount is suffi-

cient to produce 7,644 Phosphorescent Paint Kits covered by that contract; however, a quantity of 989 gallons only were available from Army stocks as Government Furnished Material. Procurement of 3,688 quarts (922 gals.) under Contract N383s–97516 [No. 2] was, therefore, necessary to effect completion of Contract N383s–77428 [No. 1]."

Notwithstanding the nature of contract No. 2, the standard "Government-Furnished Property" clause, which allocated the risk of loss for such property, was also inserted. Since contract No. 2 was a negotiated contract instead of an advertised one, the risk of loss by fire of the "Government-Furnished Property" was placed upon the Government, see 32 C.F.R. 13.502, but the insertion of this standard clause created the ambiguity which caused the present controversy.

Contract No. 2 also contained a "Disputes" clause, identical to the one in contract No. 1.

Appellant manufactured 1,118 quarts of phosphorescent paint pursuant to contract No. 2, and these 1,118 quarts, subsequently destroyed by fire, became the subject matter out of which the action before us arose. Of the 1,118 quarts, 318 were inspected and accepted by the Government at appellant's plant on April 6, 1954, and 800 were inspected and accepted by the Government at the plant on May 5, 1954. On each occasion, the Government inspector executed a "Material Inspection and Receiving Report," which recited among other things:

"Government-furnished property.

"Material to be used for Contract N383s–77428 [No. 1] by same Contractor for Component 'A.' "

Copies of these reports were given to appellant. Subsequently, the Government paid appellant the purchase price for these 1,118 quarts.

After the Government had accepted the 1,118 quarts, they were kept in appellant's plant. This paint was not mingled with the 240 quarts which appellant had previously received as Government-furnished property under contract No. 1. Appellant did not increase the dollar limit on its inventory insurance to reflect the value of the 1,118 quarts manufactured under contract No. 2.

On May 31, 1954, appellant's plant was destroyed by fire. Included within the property lost were the 240 quarts of paint which were admittedly Government-furnished under contract No. 1 and for which appellant acknowledged liability, and the 1,118 quarts which had been manufactured by the appellant under contract No. 2 and had been accepted by the Government. The appellant, by letter dated June 8, 1954, informed the Government of the loss of the two lots of paint. In the letter, the appellant stated: "The first 60 gal. was material which we had left from Government Furnished Material. The Balance was made for Aviation Supply Office under Contract N383s–77428 [No. 1]." [1]

The Government, in a letter dated August 4, 1954, informed appellant that a determination had been made that appellant was liable for both the 240 quarts and the 1,118 quarts of paint that had been destroyed, as both were Government-furnished property under contract No. 1, under which the risk of loss was to fall upon the contractor. On August 19, 1954, appellant replied. It admitted its liability for the 240 quarts, but requested that the Contracting Officer absolve it of liability for the 1,118 quarts because of the language in the "Government-Furnished Property" provisions of the second contract.

The Contracting Officer, on October 26, 1954, found appellant liable for the 1,118 quarts of paint. The Contracting Officer held: "Government Furnished Property clause in contract N383s–97516 [No. 2] is not applicable to and does not super-

1. At the administrative hearing an official of the appellant testified that the contract number recited in this letter was an unintentional mistake, and that he meant to refer to contract No. 2.

sede the Government Furnished Property Clause of contract N383s–77428 [No. 1]." He found that the loss of the paint occurred while it was "in the Contractor's custody pending inclusion as Government Furnished Property in kits being furnished, under contract N383s–77428 [No. 1]," and thus appellant was liable for replacement of such material under the provisions of contract No. 1.

Pursuant to the "Disputes" clauses of both contracts, appellant, on November 24, 1954, appealed to the Armed Services Board of Contract Appeals. After conducting a hearing, taking testimony, and receiving briefs from both parties, the Navy Contract Appeals Panel of the Armed Services Board of Contract Appeals, on June 24, 1957, filed its findings of fact, and handed down a decision in which it affirmed the ruling of the Contracting Officer. The Board decided "that at the time of their destruction on 31 May 1954 the 1,118 quarts of paint were at Appellant's risk under the provisions of Contract No. 1." The Board was of the view that "under the circumstances disclosed, Contract No. 2, even if deemed to be ambiguous in some respects, cannot be reasonably interpreted as providing that paint manufactured under Contract No. 2 would ever become subject to the Government-furnished property article of Contract No. 2," but rather that "Contract No. 2, in the light of the conduct of the parties, is to be reasonably construed as providing that paint manufactured under Contract No. 2 shall upon delivery become Government-furnished property under Contract No. 1 and subject, therefore, to the Government-furnished property article of Contract No. 1."

Appellant also attempted, by an amendment to its complaint filed after the hearing, to present to the Board of Contract Appeals a claim for an allowance for the Government's alleged delay in furnishing paint under contract No. 1. It invoked the clause of the contract relating to an equitable adjustment, if requested by the contractor, in price or date of performance for Government delays in furnishing material. The Board, however, refused to consider this issue, as appellant had failed to raise it either before the Contracting Officer or initially before the Board, and "the case was tried by the parties solely on the question of where the risk lies."

Thereafter, on February 25, 1958, appellant brought the present action in the district court, seeking damages, first, in the amount of $6,898.06 for the Government's alleged failure to deliver Government-furnished paint under contract No. 1, paint which appellant was required to replace after the fire by purchase in the open market, and second, additional damages in the amount of $3,000.00, claimed to have resulted from the Government's alleged delay in delivering Government-furnished paint under contract No. 1. The complaint alleged that the decision of the Armed Services Board of Contract Appeals, adverse to appellant, was "not based on substantial evidence" and "contained errors of law." Later, however, a question arose as to the scope of review in the district court under the Wunderlich Act, 68 Stat. 81 (1954), 41 U.S.C.A. §§ 321–22 (1958),[2] for the Government,

2. The Wunderlich Act provides as follows:
   "§ 1. Limitation on pleading contract-provisions relating to finality; standards of review

   "No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such of-

ficial or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fradulent (sic) or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence.

   "§ 2. Contract-provisions making decisions final on questions of law

   "No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

on October 7, 1960, moved for an order precluding the taking of testimony by the district court and directing that the scope of review be limited to a consideration of whether the decision of the Board was supported by substantial evidence and was sound in law. The court, in a memorandum opinion dated October 24, 1960, granted the Government's motion and held that the issues before it would be determined solely on the record made before the Board of Contract Appeals.

In its answer the Government had demanded judgment dismissing the complaint. By an order dated July 17, 1961, the district court granted this demand and entered judgment in favor of the Government. In its opinion, reported at 199 F.Supp. 285, the court divided the controversy into two issues. The first related to the proper interpretation of the contract provisions. This was treated as solely a question of law. The district court held as to this issue that the second contract did not supersede or modify the first contract, but merely implemented it; and that the "Government-Furnished Property" provision of contract No. 2 was not intended to cover the paint to be manufactured by appellant under that contract.

The second issue before the district court, "whether the government accepted the paint and supplied it to the plaintiff for performance of the first contract," was described by the court as a "factual issue." As to this issue the court found that the Government, by leaving with appellant the paint which appellant had manufactured under contract No. 2 and which the Government had accepted and paid for, furnished it to appellant for performance of contract No. 1. Therefore, the district court agreed with the Board that, under the risk-of-loss provision of Contract No. 1, appellant was responsible for the loss of the 1,118 quarts of paint. Appellant then appealed to this court.

There are two questions before us for decision: (1) whether the district court was correct in deciding the issues before it solely upon the record made at the administrative hearing or whether it should have taken additional testimony in a trial *de novo*, and (2) if the district court was correct in limiting the taking of evidence, whether it was correct in its interpretation of the contract provisions.

The court below was right, at least initially, in considering the interpretation of the contract provisions a question of law for its independent decision under the Wunderlich Act § 2, 68 Stat. 81 (1954), 41 U.S.C.A. § 322 (1958). See Kayfield Constr. Corp. v. United States, 278 F.2d 217 (2d Cir. 1960); H.Rep. No. 1380, 83d Cong., 2d Sess. 5 (1954). But see United States v. McKinnon, 289 F.2d 908 (9th Cir.) (per curiam). On the other hand, when it is necessary to look beyond the four corners of a document to resolve the intention of the parties, the question of the meaning of the contract has often been considered a question of fact. West v. Smith, 101 U.S. 263, 270, 25 L.Ed. 809 (1879); 4 Williston, Contracts § 616 at 660 (3d ed.).

At first blush it may appear paradoxical for appellant to insist that this issue is a "question of law" within the Wunderlich Act, and also insist that it be allowed to present additional evidence on the point in a trial *de novo* before the district court. We realize, however, that the terms "question of fact" and "question of law," may have various meanings in various contexts. Therefore, we can imagine situations in which appellant's argument would be internally consistent. Cf. Kayfield Constr. Corp. v. United States, supra. We must decide whether we are presented with one of those situations.

The law is quite unsettled whether a district court reviewing the administrative ruling of one of the contract disputes boards should grant a trial *de novo* and take testimony, or whether it should limit its review to the record made before the administrative board. The Court of Claims has generally held that a trial *de novo* should be granted. Volentine and Littleton v. United States, 145 F. Supp. 952, 136 Ct.Cl. 638 (1956). Fehl-

haber Corp. v. United States, 151 F.Supp. 817, 138 Ct.Cl. 571, cert. denied, 355 U.S. 877, 78 S.Ct. 141, 2 L.Ed.2d 108 (1957). The district courts and the courts of appeals, on the other hand, have tended to restrict court review to a review of the administrative record. United States v. McKinnon, supra; Lowell O. West Lumber Sales v. United States, 270 F.2d 12 (9th Cir. 1959); Mann Chemical Labs., Inc. v. United States, 174 F.Supp. 563 (D.Mass.1958); L. W. Foster Sportswear, Inc., v. U. S., 145 F.Supp. 148 (E.D. Pa.1956); United States Nat'l Bank v. United States, 178 F.Supp. 910 (D.Ore. 1959). But see Blake Constr. Co. v. United States, 111 U.S.App.D.C. 271, 296 F.2d 393, (1961). Moreover, the legislative history of the Wunderlich Act is inconclusive. See Volentine and Littleton v. United States, supra, 145 F. Supp. at 955, 957 (Littleton, J., concurring).

We agree with the statement by the Court of Appeals for the District of Columbia Circuit in Blake Constr. Co. v. United States, supra, 296 F.2d at 397, that "a practical approach to the allocation of functions is the guideline" we should follow, but in so resolving the problem before us we reach the opposite result from the one that court arrived at in Blake. Here, the issue on which appellant wants the district court to take additional testimony was squarely presented to the Contracting Officer and to the Board of Contract Appeals. There is nothing to indicate that appellant was precluded from introducing before the administrative tribunal whatever evidence it wished to present, and appellant does not claim to have any evidence not known of then and discovered afterwards. Moreover, appellant has failed to point out what additional testimony, not presented to the Board, it desires to present to the district court, and it concedes in one part of its brief that the basic facts are not in dispute.

■ Appellant should have presented all its evidence to the administrative board. If it had done so, the evidence would have been available both to the administrative tribunal and to the district court. Since the parties had proceeded through a full hearing before the Board of Contract Appeals, the district court was quite correct, under the circumstances here presented, in limiting its review to the record made before the administrative board. Cf. United States v. Hamden Co-op. Creamery Co., 297 F.2d 130, 133 (2d Cir. 1961).

■ Thus we turn to the remaining question before us, whether, on the evidence before it, the court below was correct in its interpretation of the two contracts. We hold that the district court's interpretation was correct. The two paragraphs of contract No. 2 quoted earlier in this opinion make it abundantly clear that it was the Government's intention in entering into that contract to obtain the quantity of phosphorescent paint it needed to complete its obligation under contract No. 1.

Appellant concedes that the Government accepted and paid for the 1,118 quarts of paint that were destroyed. Upon this acceptance these quarts became Government-furnished paint under contract No. 1, not under contract No. 2. A reasonable construction of the two contracts is that contract No. 2 implemented contract No. 1, and that contract No. 1 remained in effect throughout the continuing relationship between the parties. Since contract No. 1 placed the risk of loss upon appellant for "Government-Furnished Property" under that contract, it follows that appellant must bear the loss.

Appellant relies heavily upon the "Government-Furnished Property" provisions of contract No. 2, which place the risk of loss on the Government for property to which those provisions apply. These were standard provisions found in all negotiated contracts of this type. It would appear that the parties included these standard provisions without considering exactly how the provisions would affect the relationship between them. It would be an awkward interpretation to infer that the present parties by the inclusion of this standard clause intended

 

that the paint to be manufactured under contract No. 2 *by appellant* was to be *Government-furnished* property under that contract.

Appellant's belated contention as to delay by the Government is also without merit.

The district court properly dismissed the complaint.

Judgment affirmed.