**SUNROC REFRIGERATION CO. v. UNITED STATES.**

**Civ. A. No. 11173.**

United States District Court
E. D. Pennsylvania.
April 30, 1952.

132

Frederick H. Spotts, Philadelphia, Pa., for plaintiff.

Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

CLARY, District Judge.

Sunroc Refrigeration Company, originally a partnership and now incorporated under the laws of the State of Delaware, sold to the United States Government, specifically to the Navy Department Bureau of Supplies and Accounts, in March of 1941 and February of 1942, certain Water Coolers and Refrigerators together with spare parts. The first Contract No. 82587 was dated March 4, 1941, the second Contract No. 98836 was dated February 10, 1942 and the third and last Contract No. 98840 was dated February 23, 1942. Under the first Contract No. 82587 the Company shipped 26 electric water coolers to the Supply Officer, Puget Sound Naval Shipyard, Bremerton, Washington, which were damaged in transit, and the Company sent 26 additional coolers to replace those originally shipped. Of the 26 damaged coolers only 13 were returned to the Sunroc Spring Water Co. Under Contract No. 98836, during August of 1942, the Company shipped electric water coolers to the Naval Supply Depot, Oakland, California, 40 of which were damaged in transit. The Company replaced only 7 of the damaged water coolers. Under Contract No. 98840, during March of 1942, 17 electric refrigerators were shipped to the Naval Supply Depot, Oakland, California, of which 10 were alleged to have been damaged in transit.

The present action arises out of the above described transactions. All of the water coolers under Contract No. 82587 and Contract No. 98836 and all 17 electric refrigerators under Contract No. 98840 were inspected, tested, and approved, prior to shipment, by a resident naval inspector at Philadelphia, Pennsylvania, who completed I.N.M. forms showing all shipments inspected and approved. All shipments were made on Government bills-of-lading F.O.B. Media, Pennsylvania, in accordance with the contracts. The Company under Contract No. 82587 claimed the contract price of $9,985 for the 26 water coolers delivered in May of 1942, less a salvage value of $400 for the 13 coolers returned, or a total of $9,585. As a set-off against that claim, under Contract No. 98836, the Government claimed a refund of the total purchase price of the 33 water coolers not replaced, or a total of $7,326; also under Contract No. 98840 the Government claimed a refund of the price of the 10 electric refrigerators in the amount of $2,433.20, or a total of $9,759.20.

From 1942 to 1947 numerous conferences were held between representatives of the Navy and the Plaintiff's Company in an effort to arrive at a settlement of the conflicting claims. In 1945 the Navy referred the matter to the General Accounting Office for settlement and, for some reason not appearing in the record but possibly due to the Contract Settlement Act of 1944, 41 U.S.C.A. § 101 et seq., the matter was returned by the General Accounting Office to the Navy Department for further consideration and further determinations. Each contract contained a Standard Disputes Clause which in the instant contracts appears as Article 12 of each contract and which reads as follows:

"Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer, subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties hereto. In the meantime the contractor shall diligently proceed with performance."

In October of 1947 responsible officers of the Navy Department and the plaintiff met, considered the disputes and mutually agreed upon a settlement of the disputes. As part of his duty, the duly qualified Contracting Officer of the Navy, E. F. Metzger, executed in writing certain findings of fact in connection with the three above referred to contracts. These determinations and findings of fact were transmitted to the General Accounting Office as well as to the Plaintiff Company. In the "Findings of Fact", the Contracting Officer stated that due consideration had been given to the change in specifications made by the Navy after the award of the contract, which provided for more rigid requirements than those in the original specifications; to the fact that all merchandise supplied under the contract had been unqualifiedly accepted by the Inspector of navy material in Philadel-

phia; to the uncertain origin of the damage in transit and the difficulty, if not the impossibility, of establishing accurately that the operating defects of the merchandise reported by forces afloat were not directly traceable to damage in transit rather than being due to inherent defects in the manufacture of the merchandise. As a result of his determinations and appraisal of all of the facts, and the mutual agreement of the parties, he determined that of the merchandise returned to the contractor a 25% salvage value was due the Government in the amount of $2,439 thereby reducing the contractor's claim from $9,585 to $7,146. Further, in determining the responsibility for the remaining damage and unsatisfactory performance, he assessed 50% of the balance of the claim against the contractor thus reducing the amount due the contractor to $3,573.

These determinations and findings of fact were returned to the General Accounting Office with the suggestion that settlement be made on that basis. The General Accounting Office rejected these findings, declined to allow either of the adjustments determined by the Contracting Officer, reinstated the Government's claim of $9,759.20 and set-off against that claim a sum admittedly due by the Government to the Plaintiff Company for coolers furnished the Post Office Department, the sum of $4,766.70, and issued its Certificate of Settlement showing a balance due the Government of $4,592.50. Plaintiff thereupon instituted this action claiming $3,573 under the factual determinations of the Contracting Officer plus the sum of $4,766.70 admittedly due from the Post Office Department, or a total of $8,339.70.

The contract itself provided for the settlement of all disputed questions of fact by the Contracting Officer. The findings of fact of the Contracting Officer, dated October 6, 1947, which appear as Exhibit "A" to the Complaint, certainly made factual determinations as to the only items in dispute between the parties, the amount of the damage and the responsibility therefor. These points had been the subject of numerous conferences between the parties and were peculiarly ques-

tions of fact to be determined by the Contracting Officer. If the determinations were honestly arrived at, that is the end of the case. United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154. The Government did not contend in this case that there was any fraud or overreaching on the part of anyone. At the trial the Government was faced with the conflicting decisions of two co-ordinate Government departments. No statute or decided case has been brought to my attention which gives the General Accounting Office the authority to overrule findings of fact made by a contracting officer in the absence of fraud. No fraud has been shown here. This case has many similarities to the case of Leeds & Northrup Co. v. United States, D.C., 101 F.Supp. 999, wherein Judge Grim of this Court likewise held that the right of the General Accounting Office to settle and adjust all claims and demands by and against the Government of the United States, 31 U.S.C.A. § 41 et seq., is subject to the rights of parties to a contract, including the Government, to provide for some designated person or persons, even if in the employ of one of the parties, to make a final determination of any question which may arise between them. In the absence of averment and proof that there was conscious wrongdoing and intention to cheat or be dishonest, the Court may not set aside such findings of fact. United States v. Wunderlich, supra. James Graham Mfg. Co. v. United States, D.C., 91 F.Supp. 715. Judge Grim in his opinion, which contains a full discussion of the cases in point, sets forth that while the powers of the Comptroller General are extensive and broad, he does not, absent fraud or overreaching, have authority to determine the propriety of contract payments when the contracts themselves vest the final power of determination in the contracting executive department.

█ The record in this case clearly indicates that a bona fide dispute existed between the parties to this litigation and the differences between the parties involved disputed questions of fact regarding cause of damage and responsibility

therefor. These determinations were resolved partially in favor of the Government and partially in favor of the Plaintiff Company. Absent fraud the findings of the Contracting Officer on these disputed points are controlling rather than the determination of the General Accounting Office overruling the Contracting Officer's findings of fact.

Plaintiff has submitted certain requests for Findings of Fact, Nos. 1 to 22 inclusive, which embody substantially the facts set forth above. I adopt them as my Findings of Fact in this case.

Plaintiff is entitled to recover from the defendant the sum of $3,573 under Contracts Nos. 82587, 98836 and 98840, plus the additional amount of $4,766.70 due plaintiff on account of coolers sold to the Post Office Department, or a total of $8,339.70.

An Order for Judgment will be entered in that amount.