UNITED STATES of America, Plaintiff,

v.

HAMDEN CO–OPERATIVE CREAMERY COMPANY, Inc., Defendant.

Civ. 16158.

United States District Court
E. D. New York.
July 25, 1960.

Cornelius W. Wickersham, Jr., U. S. Atty., E. D. New York, Brooklyn, N. Y., for plaintiff; Irving L. Innerfield, Asst. U. S. Atty., New York City, of counsel.

O'Brien & Kelly, Brooklyn, N. Y., for defendant; John D. Kelly, Brooklyn, N. Y., of counsel.

BARTELS, District Judge.

This is an action by the Government (as sole stockholder of Commodity Credit Corporation [CCC]) pursuant to 15 U.S.C.A. § 714 et seq. and 28 U.S.C.A. § 1345, seeking $12,386.60 damages for breach of an implied warranty in connection with six contracts for the sale of 3,460 drums of powdered milk (671,-664 pounds) entered into between CCC as purchaser and Hamden Co-Operative Creamery Co. Inc. [Hamden] as seller. The damages are based upon the difference between the amount paid for 1,781 drums (515,464 pounds) and the amount for which the same was sold by CCC at competitive bidding for infested milk.

The contracts were made pursuant to "Announcement Da–56" of the United States Department of Agriculture dated April 29, 1949, which required all offers to be made subject to its terms, one of which was that the milk delivered shall meet the requirements for Extra Grade as set forth in "Tentative U. S. Standards for Grades of Dried Skim Milk and Dried Whole Milk". Under paragraph 5, page 3, entitled "Inspection", Da–65 made it incumbent upon Hamden to have the powder inspected by CCC inspectors, graded and weighed by experts chosen by CCC before Hamden could offer the same for sale. The powder was so inspected and as a result Grading Certificates were issued by the Department of Agriculture. This inspection consisted of taking a one pound sample from one drum (200 lbs.) in every twenty drums (4,000 lbs.) offered for sale. The Government inspectors also took a sample of the powder for analysis by laboratories chosen by the Government. After the powder was accepted by the Government f. o. b. Hamden Plant, delivery was made

on and between May 20, 1950 and July 12, 1950 to two Government warehouses, one the Foreign Trade Zone in Staten Island and the other in Waverly, New York.

On July 14, 1950 an inspector of the New York State Bureau of Markets discovered the presence of maggots in Hamden's plant and on July 25, 1950 the Regional Supervisor of the Dairy and Poultry Inspection and Grading Division of the Department of Agriculture also inspected the plant and found infestation in the milk powder production at the plant and suggested that a new sanitary packing operation be installed in the plant in place of the existing conveyor metal chute set-up. Immediately prior to July 14, 1950 Hamden had shipped four cars (780 drums) of milk powder to CCC (not involved herein) and upon request from the contracting officer after July 14, 1950, agreed to take the return of the same. Although these drums had also passed Government inspection there was evidence that larvae were found therein. Hamden claims however that the return of these drums was accepted because delivery had been made so close to July 14, 1950, the date of discovery of infestation in Hamden's plant. In September, 1950 an inspection in Government warehouses of the drums of powder involved in this case disclosed the presence of larvae although the warehouses were found free of such infestation. Consequently, on October 17, 1950 (four or five months after acceptance) CCC notified Hamden that upon reinspection at the warehouses where the Government had stored the powder the same was found to be infested and therefore demanded that Hamden accept the return of the powder. On November 13, 1950 Hamden finally declined to accept the return of the powder. Accordingly, by letter dated January 23, 1952, the contracting officer acting pursuant to Article 22 of the Contracts (the standard dis-

putes clause), notified Hamden of his finding that the powder was infested at the time of the delivery to CCC and that damages of $12,386.60 had been sustained. Upon appeal by Hamden to the Contract Disputes Board a hearing was held by the Board in accordance with the Board's rules,[1] at which hearing Hamden appeared, filed a brief and participated. Among the exhibits received in evidence by the Board were opinion letters, one from the Government's expert and the other from Hamden's expert concerning the discoverability of larvae by inspection. On August 11, 1952 the Board made findings sustaining the contracting officer. In these findings it held that the infestation at the time of the delivery of the powder to the Government was in the early stages of development and could not have been discovered by visual inspection thereof and that after delivery the infestation developed to a stage where it became readily apparent by visual inspection. In other words, the Board held that the infestation was a latent defect which CCC was not required to discover upon the first inspection and that such an inspection and acceptance did not preclude subsequent inspection and rejection when the latent defect developed into a patent defect.

Based upon the contracts in question, the record before the Contract Disputes Board, inspection certificates and supporting exhibits, the Government now moves pursuant to Rule 56, Fed.Rules Civ.Proc., 28 U.S.C.A., for a summary judgment. Inconsistent with the theory of this motion, the Government has submitted interrogatories, and a pretrial statement of facts, signed subsequent to the determination by the Board. If the Government's position upon this motion is correct, no evidence or stipulation produced subsequent to the Board's finding may be considered.

Involved here is a Government contract containing a disputes clause[2] pro-

1. Subchapter A, Part 400, Chapter IV Title 6, Code of Federal Regulations, revised 1956.

2. Article 22, Disputes, Form PMA–100, Standard Contract Conditions.

viding that any unsettled dispute concerning questions of fact shall be determined by the contracting officer and upon appeal, by the head of the Agency whose decision shall be final. The statutes applicable to this case are Sections 321 and 322, Title 41 U.S.C.A., which read as follows:

§ 321.

"No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

§ 322.

"No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

██ Hamden makes a number of claims and charges in connection with the Board's findings, some of which attack the findings and some involve evidence not before the Board. At the threshold it should be made clear that the Court is limited in its review to ascertain whether the Board's decision on the facts was "fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence." If the Board's findings are not tainted by any of the above faults, they are final and conclusive, although such finality does not attach to decisions of law made by the Board.

Hamden having exhausted its remedies before the administrative agency, is not at this stage entitled to a new trial unless the Board's decision is vulnerable. Otherwise the hearing before the Board would be rendered nugatory and constitute a time-consuming nullity providing both parties with two opportunities to present their case. No new evidence based on affidavits, interrogatories or other documents can now be considered by the Court, its jurisdiction being limited by the boundaries of the statute setting forth the only judicial review to which Hamden is entitled. In P. L. S. Coat & Suit Corp. v. United States, Ct.Cl.1960, 180 F.Supp. 400, 405, the Court stated:

"The finality of the board's decision as permitted under the language of the disputes clause, as well as under the Wunderlich statute is not to be defeated nor the existence of a material dispute of fact to be shown merely by plaintiff's desire to have a trial here in order to correct errors and omissions which may have been made in the proceedings before the board."

To the same effect are: Mann Chemical Laboratories, Inc. v. United States, D.C. Mass.1958, 174 F.Supp. 563; Wells & Wells, Inc. v. United States, 8 Cir., 1959, 269 F.2d 412; United States National Bank of Portland v. United States, D.C. Or.1959, 178 F.Supp. 910; see also, Sunroc Refrigeration Co. v. United States, D.C.Pa.1952, 104 F.Supp. 131.

 Although there is no allegation of fraud in its complaint as required by Rule 9(b) [Fed.Rules Civ.Proc.], Hamden's affidavit does claim that one of the Board's findings was based upon fraud. In paragraph 3 of its findings the Board states that upon inspection of the warehouses where Hamden's powder was stored it was found that no other shipments of powder were infested and that the warehouses were free from infestation. Answers to subsequent interrogatories (erroneously permitted by both sides) posed to the Government's witnesses years after the finding, dis-

closed that two warehouses were involved; that as to one of the warehouses the finding was correct and as to the other warehouse the finding was subject to the exception that while the warehouse was free from infestation the powder from two manufacturers was suspect although the powder from 90 lots from other manufacturers reposing in that warehouse was free from infestation. In the suspect cases barrels were used rather than leverpak drums which Hamden used and which were considered impervious to infiltration. Thus, Hamden, long after the hearing, made a discovery of additional evidence which it could have discovered before or at the hearing and which cannot be classed as material although it differs in a minor respect from the Board's finding in paragraph 3. This discrepancy is the basis of the charge. Under the circumstances the Court has no authority to consider this belated evidence. In fairness it should be stated that this subsequently adduced evidence does not disclose fraud or facts which would lead the Court to believe that Hamden did not have a fair trial. After scrutinizing the record the Court concludes that the Board's findings were not based upon fraud, bad faith or capricious or arbitrary conduct (see, United States v. Blair, 1944, 321 U.S. 730, 64 S.Ct. 820, 88 L.Ed. 1039).

■■ The Board's decision must still survive the test of substantiality. In conducting its hearings the Board may be governed by its own procedural rules, the authority for which is found in Title 15 U.S.C.A. § 714b(d). Under these rules the finding of the hearing officer is *prima facie* correct and "the strict rules of evidence as required in courts of law will not be invoked." [3] Common law exclusionary rules of evidence are not applicable (see, Willapoint Oysters v. Ewing, 9 Cir., 1949, 174 F.2d 676, 690, certiorari denied, 338 U.S. 860, 70 S.Ct.

101, 94 L.Ed. 527, rehearing denied 339 U.S. 945, 70 S.Ct. 793, 94 L.Ed. 1360). The concept of substantiality is an elusive one and difficult to pin down. It is an "undefined defining" term as stated by Mr. Justice Frankfurter (Universal Camera Corp. v. N.L.R.B., 1951, 340 U.S. 474, 489, 71 S.Ct. 456, 465, 95 L.Ed. 456). "[S]ubstantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. of New York v. N.L.R.B., 1938, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126. But in weighing this evidence the record must be considered as a whole (see, Universal Camera Corp. v. N.L.R.B., supra). As pointed out by Professor Jaffe of Harvard "the judgments of the administrative agency derive from experience in a special field and are presumptively correct." and that "the touchstone of rejecting an administrative decision is the sense of the judge that it is unfair—the product of a preconception." [4]

■■ Hamden claims that based on the evidence there was no breach of warranty and that even if there were such a breach, rejection by the Government was too late because the powder was retained too long after delivery and too long before notice of infestation. These were all questions of fact to be determined by the trier of the facts (Lembo v. Andola, 1950, 277 App.Div. 1077, 100 N.Y.S.2d 561; Schrager & Muster, Inc. v. Magical Frocks, Inc., Sup.1948, 77 N.Y.S.2d 825). Hamden further argues that subsequent discovery of the infestation in Hamden's powder while in the Government's warehouse was not evidence of infestation at the time of the delivery of the powder, particularly since delivery was made before discovery of infestation in Hamden's plant. In other words, it objects to the application of any "presumption in reverse". While the Board's finding does

---

3. Subchapter A, Part 400, § 400.4(e) (1), (2), Chapter IV Title 6, Code of Federal Regulations, revised 1956.

4. 64 Harvard Law Review 1233, 1245, Judicial Review: "Substantial Evidence on the Whole Record".

not rest solely upon such inference, it cannot be said that the application of this rule was unwarranted. Wigmore and other authorities express the view that under certain circumstances the subsequent existence of a condition is evidence of the existence of that condition at the time in issue (2 Wigmore on Evidence, 3rd Ed., § 437; Fisch on New York Evidence, §§ 208 and 1122).

In the light of the applicable tests the Court concludes that the findings of the Board have survived the ordeal of substantiality and that Hamden has been afforded a fair and adequate hearing.

Hamden also raises certain questions of law. It argues that the sale was not made upon any express or implied warranties, that the Government's right to object to infestation was lost by acceptance, and that the damages were computed in an erroneous manner. These contentions are without merit. There is no question that under Sections 95, 96 and 97 of the New York Personal Property Law, McKinney's Consol.Laws, c. 41, goods sold by description shall correspond with the description, shall be of a merchantable quality, and shall be reasonably fit for the particular purpose for which the goods are required. Where, as here, the defect in the case was latent and was one that could not have been discovered by inspection, the buyer's right of rejection was not lost by acceptance (3 Williston on Contracts, rev. ed., § 713; Johnston Mfg. Co. v. Wilson Thread Co., 4 Cir., 1920, 269 F. 555). The powder here was sold as insect infested powder for the best price obtainable under competitive bids after affording Hamden an opportunity to dispose of the same by accepting the return thereof. The difference between the amount received upon the sale and the purchase price paid was the proper measure of damages.

The Government's motion for summary judgment pursuant to Rule 56 is hereby granted. Settle order on two days' notice.