UNITED STATES of America, Plaintiff-Appellee,

v.

HAMDEN CO-OPERATIVE CREAMERY COMPANY, Inc., Defendant-Appellant.

No. 357, Docket 26747.

United States Court of Appeals Second Circuit.

Argued May 26, 1961.

Decided Dec. 14, 1961.

William H. Orrick, Jr., Asst. Atty. Gen.; Elliot Kahaner, U. S. Atty., Brooklyn, N. Y., John G. Laughlin, Attorney, Department of Justice, Washington, D. C., for plaintiff-appellee.

O'Brien & Kelly, Brooklyn, N. Y. (Joseph F. O'Brien, John D. Kelly, Brooklyn, N. Y., of counsel), for defendant-appellant.

Before CLARK and WATERMAN, Circuit Judges, and ANDERSON, District Judge.

WATERMAN, Circuit Judge.

The defendant-appellant, Hamden Cooperative Creamery Co., appeals from an order of the United States District Court for the Eastern District of New York granting a motion for summary judgment in favor of the plaintiff-appellee United States, sole stockholder of Commodity Credit Corporation.

In April, May, and June 1950, Hamden entered into six contracts with the Commodity Credit Corporation (CCC) for the sale of 3,460 drums (671,664 pounds) of "Extra Grade" powdered milk, a quality fit for human consumption. Pursuant to Announcement DA–65 of the United States Department of Agriculture, under which the contracts were made, experts chosen by CCC inspected, graded, and weighed the powder; and, as a result, the Department of Agriculture issued Grading Certificates indicating that the defendant's milk powder met the requirements of "Extra Grade." The inspection consisted of a visual examination and a one pound sampling of approximately one drum (200 pounds) in every twenty drums (4,000 pounds). The samples were sent to a government laboratory for

**132**

analysis. After the Government had inspected and accepted the powder, f. o. b. Hamden's plant, the powder was delivered between May 20, 1950, and June 12, 1950, to two government warehouses, one in Staten Island, New York, the other in Waverly, New York.

On July 14, 1950, an inspector of the New York State Bureau of Markets discovered maggots in Hamden's plant. On July 25, 1950, the Regional Supervisor of the Dairy and Poultry Inspection and Grading Division of the U. S. Department of Agriculture also inspected the plant and found infestation by larvae classified as maggots, meal worms, and carpet beetles, the latter two in the pupal stage as well as the larval stage. He suggested that Hamden install a new sanitary packing operation in place of the conveyor metal chute then being used, which, he stated, was almost impossible to keep clean. Hamden immediately made this change and then its plant was reinspected and approved.

Just prior to the July 14 inspection Hamden had shipped four cars (780 drums) of milk powder to CCC (not the powder involved in the present litigation). Although these drums also had originally passed government inspection, a reinspection subsequent to the discovery of infestation in Hamden's plant disclosed that this milk powder was infested. Upon the request of the government contracting officer, Hamden agreed to accept the return of this shipment.

In September 1950 the Government reinspected the May and June shipments of milk powder and found larvae present. Consequently, on October 17, 1950, CCC demanded that Hamden accept the return of this powder. Hamden refused, and stated as one ground for its refusal that the rejection was too long delayed. Thereupon, CCC sold the infested powder as animal feed at a loss to the United States of $12,386.60. Acting pursuant to the standard disputes clause of the contracts, the contracting officer, on January 23, 1952, notified Hamden that he found the powder to be infested at the time of delivery to CCC and demanded payment for the damages sustained by the United States in the amount of $12,386.60.

Within thirty days Hamden, as its contract permitted it to do, appealed to the Contract Disputes Board. In making its findings, the Disputes Board considered the oral testimony of the appellant's attorney, who was personally acquainted with the facts; the oral testimony of two officers of the Department, who did not have such knowledge; the contracting officer's written statement of his findings; and opinion letters concerning the presence and discoverability of infestation from a government expert entomologist and from an expert for the appellant. From this material the Board found that the government warehouses where Hamden's powder was stored were free from infestation; that powder received from other manufacturers stored in those warehouses was similarly free from infestation; that Hamden's milk powder was infested at the time of delivery; that the infestation at that time was a latent defect which did not preclude CCC from subsequent rejection of the commodity; and that, therefore, Hamden was indebted to CCC in the amount of $12,386.60, being the difference between the cost of replacement of Extra Grade milk powder, fit for human consumption, and the price obtained from the sale of the infested powder for animal feed.

Hamden refused to pay the amount the Contract Disputes Board assessed, and the Government instituted this action to recover that sum. Answers to interrogatories posed to the Government's witnesses in 1956 for trial use disclosed that in 1950, as the Contract Disputes Board had found, the warehouse in Waverly and the powder of other manufacturers stored there were free from infestation, but that at the time herein pertinent in the Staten Island warehouse two lots of powder from other manufacturers were infested, although eighty-eight lots and the warehouse itself were not. The Government moved for summary judgment upon affidavits, opposition affida-

vits, and an agreed statement that included the fact that the Contract Disputes Board had made findings. The district court granted the motion, and in a written opinion reported at 185 F. Supp. 541 (1960) held that the findings of the Contract Disputes Board were not based upon fraud, bad faith, caprice, or insubstantial evidence, and that Hamden sold the powder upon the implied warranties of description, merchantability, and fitness for a specific purpose.

Hamden appealed. It claimed that the district court erred in not holding that the Government was barred from a recovery because of its delayed notice of rejection; in refusing to consider Hamden's newly discovered evidence; in holding that the Contract Disputes Board's ultimate findings were supported by substantial evidence; and in failing to make findings of its own supplanting those made by the Board.

The provision contained in the contracts between appellant and CCC that the Government relied upon was a standard one, Article 22 of Form PMA–100. It read in pertinent part as follows:

> "Disputes. Any dispute concerning questions of fact which may arise under the contract * * * shall be decided by the officer executing the contract in behalf of the Agency * * * [C]ontractor may appeal to the head of Agency, whose decision or that of his designated representative shall be final and conclusive upon the parties. Pending decision of such dispute the Contractor shall diligently proceed with the performance of the Contract."

No determinations could be more factual than those of ascertaining the times when the appellant's milk powder became infested and when that infestation was discoverable.

■ Inasmuch as the appellant has appeared, briefed, and argued its case before the Contract Disputes Board without reservation and in compliance with Article 22, it is now too late for it to assert that the Board could not decide the factual issues presented in appellant's dispute with the Government. This disputes clause provided a method of arbitration by which factual disputes arising between the contracting parties were to be resolved. E. I. DuPont De Nemours & Co. v. Lyles & Lang Constr. Co., 219 F.2d 328, 334 (4 Cir. 1955), cert. denied 349 U.S. 956, 75 S.Ct. 882, 99 L.Ed. 1280. In none of the cases relied upon by the appellant, E. I. DuPont De Nemours & Co. v. Lyles & Lang Constr. Co., supra; United States v. Duggan, 210 F.2d 926 (8 Cir. 1954); Jacobs v. United States, 239 F.2d 459 (4 Cir. 1956), cert. denied 353 U.S. 904, 77 S.Ct. 666, 1 L.Ed.2d 666 (1957); and 42nd St. Fotoshop, Inc. v. United States, 137 F.Supp. 313 (S.D. N.Y.1955), had either party submitted the dispute there involved to the agency board. We add that disputes concerning the times of infestation and its discoverability seem to us to be especially appropriate for administrative adjudication under Article 22.

■ Review by the courts is limited to determining whether the decision of the Board is supported by substantial evidence and whether it is free from fraud, caprice, arbitrary conduct, and bad faith. 68 Stat. 81 (1954), 41 U.S. C.A. 321. "Substantial evidence * * means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 207, 83 L.Ed. 126 (1938). Substantial evidence supports the decision of the Contract Disputes Board that the appellant's powder was infested at the time of delivery but that the infestation was not discoverable until later. The appellant's plant was infested in July. A shipment of powder just prior to that date was also infested; and, when it was discovered to be so, Hamden, without admitting any responsibility for the infestation, accepted its return. In September larvae were discovered in the powder involved in this litigation. An entomologist from the Department of Agriculture expressed an opinion that the powder was infested at the time of

delivery, but that the infestation was not then discoverable. Moreover, the returned July shipment was found to be infested after that shipment had similarly passed initial inspection.

■ The appellant asserts that the decision of the Contract Disputes Board should be overturned because the Government admitted several years later that in one of the two warehouses where the appellant's powder was stored two lots of powder out of ninety such lots received from other manufacturers were found to be infested. If appellant's newly discovered evidence had been more significant, we would have been required to deal with the interesting and difficult question whether the district court should have considered this evidence. Compare P. L. S. Coat & Suit Corp. v. United States, 180 F.Supp. 400 (Ct.Cl.1960), and Volentine and Littleton v. United States, 145 F.Supp. 952 (Ct.Cl.1956), with United States Nat'l Bank of Portland v. United States, 178 F.Supp. 910 (D.C.D.Ore. 1959), and Mann Chem. Labs. Inc. v. United States, 174 F.Supp. 563 (D.C.D. Mass.1958). But Hamden's additional evidence that it would have had the district judge consider is too insignificant to shake the determination that the Board's findings were supported by substantial evidence and were free from fraud or other infirmities.

■■ Inasmuch as its milk powder was not fit for human consumption, the appellant breached its implied warranties of description, fitness for a special purpose, and merchantability. N. Y. Personal Property Law, McKinney's Consol. Laws, c. 41, §§ 95, 96(1), (2), Uniform Sales Act, §§ 14, 15(1) (2).[1] It knew from the grading requirements of the CCC that "Extra Grade" powder had to be suitable for human consumption. Inasmuch as forms of infestation, including those involved here, can be latent at the time of a delivery, a buyer is forced to rely upon a seller's care in keeping its plant sanitary; and the Government's failure here to discover the infestation upon inspection did not relieve the appellant of its liability under its warranties. See N. Y. Personal Property Law, § 96 (3), Uniform Sales Act, § 15(3); J. Aron & Co. v. Sills, 240 N.Y. 588, 148 N.E. 717 (1925); Rinaldi v. Mohican Co., 225 N.Y. 70, 121 N.E. 471 (1918); Liberman v. Sheffield Farms-Slawson-Decker Co., 117 Misc. 531, 191 N.Y.S. 593 (1921).

New York Personal Property Law, § 130 (Uniform Sales Act section 49) provides:

"[I]f, after acceptance of the goods, the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

■ Neither party knew of any infestation until July. In that month the appellant learned from state and federal officials that its plant had been infested, and a recent shipment of milk powder from the plant had likewise been found to be infested. In September, maggots were discovered in the powder involved in this litigation. Formal notice of the breach was given to the appellant in October. Ordinarily whether notice is given within a reasonable time is a question for the trier of fact. Lembo v. Andola, 277 App.Div. 1077, 100 N.Y.S. 2d 561 (1950); Schrager & Muster, Inc. v. Magical Frocks, Inc., Sup., 77 N.Y.S. 2d 825 (App.T.1948); 9 Wigmore, Evidence, § 2553 (3d ed. 1940).

That the written notice from the Contracting Officer to Hamden was timely and adequate under all of the circumstances of this case was a factual matter for the Contract Disputes Board to de-

---

1. Whether the New York law of sales applies to these contracts of its own force or as incorporated by federal law was not raised by the parties and need not be decided. Compare De Sylva v. Ballentine, 351 U.S. 570, 76 S.Ct. 974, 100 L.Ed. 1415 (1956); Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943); Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941).

cide on the evidence before it. The court below, in view of the extraordinary powers given to the Contract Disputes Board under Title 41 U.S.C.A. § 321, short of the evidence being so insubstantial as to make it a question of law, could not try that issue anew, nor can this court on the record disturb that conclusion.

The judgment below is affirmed.