Irving H. Saypol, J.
After trial before the court, judgment is directed for the defendants dismissing the plaintiffs’ amended complaint, with costs.
The action is at law. Of nine separately stated causes of action in the amended complaint, six were eliminated before commencement of the trial, leaving the first, second and ninth causes to be tried.
*866 Plaintiffs were subcontractors for defendants. In 1950, the latter as prime contractors engaged with the United States Government for the construction of several United States Navy and Air Force bases in Spain. All work was to be supervised by the Bureau of Yards and Docks of the United States Navy. In August, 1957 plaintiffs were successful in competitive bidding and were awarded the subcontract PAB-13 for a fixed and what eventuated as the finally paid price of $532,812, to build an electrical power plant at San Pablo, Spain, including installation therein of the Government-supplied diesel-powered electric generating and distribution system. Work under the subcontract commenced in September, 1957. It was to be completed by May 1, 1958. In November, 1958 it remained unfinished.
Details of the three separate causes of action for an aggregate of demanded damages of $125,053.08 are related in the findings and conclusions. The first two causes deal with mixed questions of fact and law. Each required interpretation or construction of the PAB-13 contract, determining whose obligation it was to supply respectively air intake and exhaust facilities and also a bank of electric storage batteries with charger, both to serve as auxiliaries to the diesel engines. The plaintiffs claim both were complements of the Government-supplied diesel engines. The ninth cause represents a claim for damages for delay attributable to the defendants and involves solely fact questions regarding the course of the work as affected by the parties’ performances.
The subcontract contained these provisions pertinent to the lawsuit. Payment was guaranteed by the United States Government. It was stipulated that 1 ‘ any dispute concerning a question of fact arising under this contract which is not disposed of by agreement” between them should be adjudicated administratively by appeal to the officer in charge of construction of the Naval Bureau of Yards and Docks or his representative (hereinafter OIOC). The latter’s decision, it was further agreed, was to be final and conclusive “unless determined by a court of competent jurisdiction to have been fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence.” It was also stipulated that if the defendants delayed in delivering to plaintiffs materials required to be supplied by the defendants, then relief would be limited solely to administrative procedure and “ The Prime Contractor shall not be liable to suit for breach of contract by reason” of such delays.
The quoted portion of the “Disputes” clause, providing for self-adjudication first by the defendant, one of the interested
*867 parties, and affording only appeal to the United States Government, the actual principal in interest, reinforced by the provision for finality thus foreclosing judicial relief except for the stated exceptions, is a paraphrase of the provisions of Federal statute, the Wunderlich Act (U. S. Code, tit. 41, §§ 321, 322). Those most familiar with it who deal frequently with contracts and subcontracts with the United States Government know the clause as “the standard disputes clause”. This “Disputes” clause traces back to the time “we built the Monitor and the Merrimac ” (Practicing Lawyer’s guide to the current Law Magazines, Arthur John Keeffe, Court of Claims and the Armed Services Board of Contract Appeals, 49 Amer. Bar Assn. Journal, Nov. 1963, p. 1134). Before the enactment of the Wunderlich Act in 1954 (68 U. S. Stat. 81; U. S. Code, tit. 41, §§ 321-322), the Supreme Court had ruled in 1951 that the Administrative Procedure Act (U. S. Code, tit. 5, §§ 1001-1011) required agency decisions to be supported by substantial evidence on the administrative record as a whole (Universal Camera Corp. v. Labor Bd., 340 U. S. 474). In the same year the court also held that administrative decisions under “ Disputes ” clauses could be attacked only for fraud. That the court defined as “ conscious wrongdoing, an intention to cheat or be dishonest” (United States v. Wunderlich, 342 U. S. 98, 100, revg. Wunderlich v. United States, 117 Ct. Cl. 92). Just before these decisions the court had held in 1950 (United States v. Moorman, 338 U. S. 457) that administrative decisions under “Disputes” procedures were final on questions of law. In 1954, without subjecting such “Disputes ” proceedings to the operative application of the Administrative Procedure Act, yet to afford protection against the possible evils implicit in self-judgment, at the same time retaining generally the finality of such administrative determinations, Congress enacted the Wunderlich statute (House Judiciary Comm. Report No. 1380, 83rd Cong. 2d Sess. [1954], reprinted in 1954 U. S. Code Cong. & Administrative News, 2191, 2194-2195; Senate Comm, on Judiciary Beport No. 32, 83rd Cong., 1st Sess. [1953]). The standards for review expressed in the Wunderlich Act (U. S. Code, tit. 41, §§ 321, 322) provide that “Disputes” decisions shall not be final on questions of law and shall be final on questions of fact unless found to be fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith or unsupported by substantial evidence.
This trial opened on the plaintiffs’ position for a trial de novo of their claims against the defendants. Initially those claims *868 had been rejected by the defendants. Thereafter the administrative appeals provided by their contract, to the OICC from the adverse conclusions of the defendants, were turned down. Now, they argue, they were denied due process in the administrative proceedings because witnesses were not sworn and there was no verbatim written record of testimony and evidence. These are matters of law. It was argued, too, that the unfavorable decisions of the OICC on the various claims were unsupported by substantial evidence, constituting mistakes in law. The defendants objected to a full-blown trial ele novo as a matter of their affirmative defenses invoking the provisions of the Wunderlich law. Decision was reserved on the objection. At the time of the trial and even after posttrial submission, judicial opinion was divided, the Federal courts holding that a trial de novo was unavailable, review in the courts being limited solely to consideration of the administrative record. On the other hand the United States Court of Claims uniformly allowed trial de novo before its Commissioners (Allied Paint & Color Works v. United States, 309 F. 2d 133, 137). The decision of the Supreme Court in United States v. Bianchi & Co. (373 U. S. 709, revg. that of the Court of Claims which had allowed a trial de novo 144 Ct. Cl. 500) finally resolved the conflict, although it came after both trial and posttrial submission by the parties here.
The following are apt quotations from the majority opinion of the Supreme Court, per Mr. Justice Haelau, in Bianchi (supra, pp. 712, 714):
“ We granted certiorari, 371 U. S. 939, to resolve a conflict among the lower courts on the important question of the kind of judicial proceeding to be afforded in cases governed by the Wunderlich Act. * * *
“It is our conclusion that, apart from questions of fraud, determination of the finality to be attached to a departmental decision on a question arising under a 1 disputes ’ clause must rest solely on consideration of the record before the department. This conclusion is based both on the language of the statute and on its legislative history.”
That branch of the plaintiffs’ attack, lack of due process because of an incompetent administrative record, without sworn or recorded testimony, is newly raised here. Submission and even resubmission before the OICC was voluntary, unlimited and without objection. No point was then made there that those proceedings were faulty. Submission was *869 complete and unfettered. While the dual final disposition here moots the point, nevertheless the following quotations are relevant and save additional discussion:
“ The issue is clearly an afterthought, brought forward at the last possible moment to undo the administrative proceedings without consideration of the merits and can prevail only from technical compulsion irrespective of considerations of practical justice. * * *
“We have recognized in more than a few decisions, and Congress has recognized in more than a few statutes, that orderly procedure and good administration require that objections to the proceedings of an administrative agency be made while it has opportunity for correction in order to raise issues reviewable by the courts * * * Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice.” (United States v. Tucker Truck Lines, 344 U. S. 33, 36-37 [1952].)
The statement by the Court of Appeals for the Second Circuit in United States v. Hamden Co-Op. Creamery Co. (297 F. 2d 130, 133 [1961]) is peculiarly applicable here: “ Inasmuch as the appellant has appeared, briefed, and argued its case before the Contract Disputes Board without reservation and in compliance with Article 22 [the ‘ Disputes ’ clause], it is now too late for it to assert that the Board could not decide the factual issues presented in appellant’s dispute with the G-overnment. This disputes clause provided a method of arbitration by which factual disputes arising between the contracting parties were to be resolved.”
However, the ultimate course taken by the defendants actually afforded a trial de novo. This is how it comes about. Although initially objecting to a trial de novo on the basis of their affirmative defense in paragraphs XXXIII and XXXIV of their amended answer invoking the Wunderlich Act, when the court reserved ruling, the defendants went forward after the plaintiffs’ direct case and put in their complete case on the merits. On their posttrial submission no mention is made of the reserved ruling and instead defendants seek and they now have favorable rulings on two separate sets of alternative findings and conclusions, that is, on the administrative record before the agency and also after the trial here.
*870 Similarly, ruling has been made on the charge of lack of substantial evidence before the OIGO. The administrative record shows fully “ such relevant evidence as a reasonable mind might accept as adequate to support a conclusion” (United States v. Hamden Co-Op. Creamery Co., 297 F. 2d 130, 133, quoting from Consolidated Edison v. N. L. R. B., 305 U. S. 197, 229). “ The term ‘ substantial evidence ’ in particular has become a term of art to describe the basis on which an administrative record is to be judged by a reviewing court. This standard goes to the reasonableness of what the agency did on the basis of the evidence before it, for a decision may be supported by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body.” (United States v. Bianchi & Co., 373 U. S. 709, 715, supra.) Here not only is there substantial evidence in the agency record, even further, the trial record confirms, rather than refutes, that administrative record.
Finally, there is the plaintiffs’ contention charging mistakes in law to the administrator. There, as here, none of the plaintiffs’ claims or causes of action were proven. Distinction between question of law and question of fact often is not readily discernible, often imprecise, subtle, and abstruse (cf. Allied Paint & Color Works v. United States, 309 F. 2d 133, 137, supra). Interpretation of the contract of the parties, paramountly, is a question of ascertainment of their intent. If ambiguity is susceptible to interpretation within the four corners of the instrument, it is purely a question of law. But if there be need to resort to extraneous evidence, for construction rather than interpretation, then it is a mixed question; the ultimate law question depending for its resolution upon the preliminary determination of the fact question (Barrand v. Quinn, 277 App. Div. 938; 4 Williston, Contracts [3d ed], § 616, p. 660). There is no such mistake of law on the determination of the facts construing the contract as to the first two causes of action and the ultimate conclusions of law by the administrator; and that is confirmed as tried out here. Nor is it any different on the straight questions of fact as to delays involved in the ninth cause of action.