**FISHEL PRODUCTS COMPANY, a co-partnership consisting of Edward R. Fishel and John D. Fishel, Appellants,**

**v.**

**COMMODITY CREDIT CORPORATION, Appellee.**

No. 22752.

United States Court of Appeals Ninth Circuit.

Sept. 15, 1969.

---

Frank J. Creede, Jr. (argued), of Creede, Dawson & Gillaspy, Fresno, Cal., for appellants.

James Stotter, II (argued), Special Asst. U. S. Atty., John P. Hyland, U. S. Atty., Los Angeles, Cal., for appellee.

Before DUNIWAY and HUFSTEDLER, Circuit Judges, and PENCE,* District Judge.

PER CURIAM:

Fishel Products Company ("Fishel") appeals from a summary judgment entered in favor of Commodity Credit Corporation ("CCC"), a corporation wholly owned by the United States. Fishel contracted to process into bulgur wheat owned by CCC. Bulgur is parched crushed wheat which is used as a dietary staple in some parts of the world.

Under one contract, dated November 28, 1962, Fishel agreed to process 5,600,-000 pounds of bulgur of a specified quality and deliver it on or before January 24, 1963. Under a second contract, dated December 28, 1962, Fishel agreed to process 6,000,000 pounds and deliver it by February 25, 1963. Under both contracts, Fishel agreed to supply performance security, and its failure to do so was expressly made a material breach of the contracts entitling CCC to terminate. CCC could reject bulgur which was below the specified quality, or accept such bulgur with a provision for specified liquidated damages.

---

* Hon. Martin Pence, District Judge, United States District Court, Hawaii, sitting by designation.

Among the "Uniform Contractual Provisions" incorporated by reference into the CCC-Fishel contracts were articles 23 and 39, providing respectively:

"If contractor refuses or fails to perform within the time specified in the contract with respect to any shipment, or any extension of such time, Agency may, by written notice, terminate the right of Contractor to proceed with the servicing of all or any part of the commodity which has not been serviced. In addition to any damages which may be provided for in the contract for refusal or failure to perform within the time specified, Agency shall be entitled to recover the difference between the contract price and the amount which Agency may pay for having any part of the commodity serviced elsewhere, and any additional costs it may incur in connection therewith * * *

"Except as may otherwise be provided in the contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, or designee of Agency, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to Contractor. Within 30 days from the date of receipt of such copy, Contractor may appeal by mailing or otherwise furnishing a written appeal addressed to the head of Agency, or such other persons as Agency may designate to receive such appeal and the decision of the head of Agency or his duly authorized representative for the hearings of such appeals shall be final and conclusive, unless determined by a court of competent jurisdiction to have been fraudulent, arbitrary, capricious or so grossly erroneous as necessarily to imply bad faith or not supported by substantial evidence * * *."

From January through March of 1963, Fishel processed 26 lots of bulgur, of which it tendered 24 to CCC. Of the lots tendered, only two met contract specifications. Five of the lots were rejected entirely. At no time did Fishel supply the required performance security.

On April 4, 1963, CCC terminated the contracts for failure to supply performance security and for failure to deliver acceptable bulgur. Fishel appealed to the Contract Disputes Board of CCC ("Board"), contending that CCC's wrongful rejection of bulgur prevented it from obtaining the required performance security. A hearing was held. In a decision dated May 8, 1964, the Board ruled that CCC was legally justified in terminating Fishel's right to proceed under the two contracts. The Board granted Fishel 30 days in which to submit additional evidence with respect to the amount of damages suffered by CCC. In a decision dated November 30, 1964, the Board ruled that damages in the amount of $159,967.07 were properly assessed against Fishel. The Board specifically rejected Fishel's claim that CCC failed to mitigate damages.

Thereafter, Fishel brought the present action in the United States District Court. In its amended complaint, Fishel alleged that (1) it had performed or was excused from performing all terms and conditions of the two contracts on its part to be performed; ((2) CCC wrongfully terminated the contract and refused to pay for the wheat which it had processed; (3) it had exhausted its administrative remedies; (4) it had discovered new evidence since the Board hearing to the effect that CCC had failed to mitigate damages suffered by CCC; (5) the decision of the Board was obtained by fraud and was grossly erroneous; (6) the decision of the Board was capricious and arbitrary, because CCC's counterclaim was presented for the first time on the second day of the four-day hearing before the Board and because Fishel was not allowed to submit evidence on the counterclaim. Fishel prayed for damages in the amount of $26,630.59, the contract price for the processed bulgur, and $208,445.88 in other damages. CCC filed an answer and a counterclaim for $159,-967.07, the damages found by the Board.

CCC moved for summary judgment on the grounds that the issues presented by the complaint had been decided by the Board and those issues could not be tried de novo in the District Court and that the Board's decision was supported by substantial evidence, was not arbitrary or capricious, or obtained by fraud. The District Court granted judgment for CCC in the amount of $159,967.07, and Fishel appeals.

Much of Fishel's argument on appeal is devoted to its contention that the determination of the disputes decided by the Board was outside the Board's ken under the proper application of article 39 of the contract. We do not decide the merits of Fishel's contention, because Fishel is not in a position to urge it. Fishel voluntarily submitted its dispute to the Board without reservation; it cannot now contend that the Board's unfavorable action upon Fishel's claim does not bind it.

Fishel is in no better posture on its claim that the Board improperly considered and decided CCC's counterclaim. Fishel did object to the presentation of CCC's counterclaim to the Board, but the sole grounds for its objection were that the counterclaim was untimely, that it was not given adequate notice of the counterclaim, and that it did not have an adequate opportunity to submit evidence on the damages sought in the counterclaim. Fishel did not object to the "jurisdiction" of the Board to decide the issues raised in the counterclaim until after the Board decided the issues.

The record does not support Fishel's claim that it was deprived of a full and fair opportunity to present its defense to the counterclaim. Fishel had ample notice that CCC intended to assert a claim for damages against it under article 23 of the contract. After the Board decided that the contracts had been properly terminated, the question Fishel itself submitted, the Board gave Fishel 30 days to submit "additional evidence with respect to the amount of damages suffered by CCC including evidence on the point of whether CCC took proper action to mitigate its damages." Fishel submitted no evidence in response to the invitation. It sought no continuance and no further hearing from the Board.

United States v. Hamden Co-Operative Creamery Co. (2d Cir. 1961) 297 F.2d 130 is directly in point. Hamden contracted to sell powdered milk to CCC. A dispute arose over the quality of milk delivered. The Contract Disputes Board found that the milk did not meet the contract specifications and that Hamden owed CCC $12,386.60. The Government brought an action to collect the damages, and the District Court entered a summary judgment on the basis of the Board's assessment, rejecting Hamden's contention that the court should consider Hamden's newly discovered evidence and should make new findings of fact. The judgment was affirmed on appeal. "Inasmuch as the appellant has appeared, briefed, and argued its case before the Contract Disputes Board without reservation * * * it is now too late for it to assert that the Board could not decide the factual issues presented in appellant's dispute with the Government. This dispute clause provided a method of arbitration by which factual disputes arising between the contracting parties were to be resolved." (297 F.2d at 133.)

We perceive no error of law in the judgment of the District Court or in the Board's determination upon which the judgment was based.

The judgment is affirmed.